UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| RAUL MADRIGAL, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | |
| | § | CIVIL ACTION NO. 5:12-CV-195 |
| GUARDIAN A DIVISION OF | § | |
| GREENE'S ENERGY GROUP, LLC, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

**REPORT & RECOMMENDATION**

Currently pending before the Court is the parties' Joint Motion for Approval of the FLSA Settlement. (Dkt. No. 139.) The District Judge referred the parties' Joint Motion to the undersigned to make findings of fact and conclusions of law. (Dkt. No. 140.) Having considered the parties' filings, arguments and the applicable law, the undersigned recommends that the settlement agreement between the Plaintiffs and Greene's Energy Group, LLC ("Greene's") be **APPROVED** and that attorney's fees be **AWARDED** to Mr. Chapman and Mr. Gonzalez in the modified amounts of $194,767.50 and $20,487.50, respectively.

**I.  Background**

Plaintiffs Raul Madrigal, Jose Soto, Juan Gonzalez, Adolfo Garza, Hector Aguilar, Frederico Rodriguez and Robert Cabrera initiated this lawsuit, claiming Greene's misclassified them as exempt under the Fair Labor Standards Act ("FLSA"), thereby failing to compensate them in accordance with the Act's overtime provisions. *See* Pls.' Compl. at 1–2, Dkt. No. 1. The case proceeded through a lengthy period of discovery and was on the eve of trial when the parties filed their Joint Notice of Settlement (Dkt. No. 137). Shortly after filing their Notice of

1

Settlement, the parties filed their Joint Motion for Approval of FLSA Settlement (Dkt. No. 139) along with their proposed Settlement Agreement and Release of Claims (Dkt. No. 139-2).

The Court held a hearing on August 19, 2015, where the parties discussed the terms of the Settlement Agreement. *See* Minute Entry 8/19/2015. At the hearing, the undersigned expressed several concerns regarding two provisions of the Settlement Agreement, and also requested that Plaintiffs' counsel file a brief in support of his requested fee award. *Id.* On August 31, 2015, Plaintiffs' counsel filed his brief and supporting documentation regarding his fees. (Dkt. No. 146.) With all of the issues now fully briefed and argued, the Court will consider whether this FLSA settlement should be approved and will also determine a reasonable award of attorneys' fees to Plaintiffs as the prevailing parties.

**II.     Analysis**

**A.  Settlement Approval**

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be." 29 U.S.C. § 216(b). FLSA claims may be negotiated if the settlement reflects "a reasonable compromise over issues." *See Villeda v. Landry's Restaurants, Inc.*, 2009 WL 3233405, at *1 (S.D. Tex. Oct. 7, 2009) (Rosenthal, J.). Courts review settlements in FLSA cases to determine whether "the settlement involves the resolution of a *bona fide* dispute over an FLSA provision and [whether] the settlement is fair and reasonable." *Rivas, et al., v. Beacoup Crawfish of Eunice, Inc.*, *et al.*, 2014 U.S. Dist. LEXIS 153370, at *6–7 (W.D. La. October 10, 2014) (citing *Lynn's Food Stores Inc. v. United States*, 679 F.2d 1350, 1352–55 (11th Cir. 1982)); *see also Bodle v. TXL Mortgage Corp.*, 788 F.3d 159, 163 (5th Cir. 2015) (citing *Martin v. Spring Break '83 Productions, L.L.C.*,

688 F.3d 247 (5th Cir.2012)) (noting that an any compromise over FLSA claims must resolve a *bona fide* dispute about the number of hours worked or compensation owed).

In this case, the parties disputed the following issues: (1) whether Plaintiffs were correctly classified as exempt from the FLSA's overtime provisions pursuant to the motor carrier exemption; (2) whether the "small vehicle" exception to the motor carrier exemption applies which would have rendered the Plaintiffs eligible for overtime pay; (3) the number of hours worked and the amount of compensation owed; and (4) whether the statutory damages model of one-and-a-half times the ordinary rate of pay or the fluctuating work week model applied. Joint Mot. To Approve Settlement at 1–2, Dkt. No. 139. Because of these contested issues there was "genuine uncertainty as to the outcome" for both sides, and therefore, *bona fide* disputes as to FLSA existed. *See Liger v. New Orleans Hornets NBA Ltd. P'ship*, 2009 U.S. Dist. LEXIS 85733 (E.D. La. 2009). Having found that a *bona fide* dispute exists, the Court must now determine whether the settlement is fair and reasonable.

Although FLSA collective actions are distinct from Rule 23 class actions, courts have adopted many of Rule 23's procedures to determine whether an FLSA settlement is fair, adequate and reasonable. *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 722 (E.D. La. 2008). Courts considering whether a settlement is fair and reasonable look to many factors including: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members. *Id.* (citing *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir.1983)). While considering these factors, there is a "strong presumption" that the settlement is fair. *See*,

*e.g.*, *Camp v. Progressive Corp.*, No. CIV.A. 01-2680, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).  After considering the facts and procedural history of this case, there is nothing that would lead the Court to believe that this settlement, as a whole, is inherently unfair.  Many of the above-mentioned factors – including the probability of the plaintiffs' success on the merit, the range of possible recovery, and the opinions' of class counsel and representatives – support approving the settlement.  There is also no evidence of fraud or collusion in this case.

In addition to the six aforementioned factors, courts have considered the unique nature of the FLSA and the underlying policy goals of this distinctive remedial scheme.  *See*, *e.g.*, *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348–49 (M.D. Fl. August 6, 2010) (mentioning the unique history and policy goals undergirding the FLSA).  The FLSA's legislative history shows "an intent on the part of Congress to protect certain groups of the populations from sub-standard wages and excess hours which endangered the national health and well-being and the free flow of goods in interstate commerce."  *Cheeks v. Freeport Pancake House, Inc.*, 2015 U.S. App. LEXIS 13815, at *18–19 (2nd Cir. August 7, 2015) (quoting *Brooklyn Savings Banks v. O'Neil*, 324 U.S. 697, 703 (1945)).  The FLSA "was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce."  *Id.*, citing *Brooklyn Savings*, 324 U.S. at 706–07.

Given the history and policy interests underlying the FLSA, the Court raised two concerns at the hearing with the parties: (1) the broad scope of the release clause waiving future claims unrelated to the instant action; and (2) the confidentiality clause in light of the well-

established precedent for FLSA settlements being made public. Pervasive releases of claims in FLSA settlements are generally discouraged:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim . . . Although inconsequential in the typical civil case (for which settlement requires no judicial review) an employer is not entitled to use an FLSA claim . . . to leverage a release from liability unconnected to the FLSA.

*Id.*[1]   Likewise, confidentiality provisions are similarly disfavored in FLSA settlements given the unique nature of the substantive labor rights involved and the public's interest in learning about wage violations. *See*, *e.g.*, *Patel v. Shree Jalarm, Inc.*, 2013 WL 5175949, at *4 (S.D. Ala. Sept. 13, 2013) (noting that confidentiality clauses are disfavored in the FLSA context).[2]   However, when the undersigned discussed these two suspect provisions with counsel at the hearing, counsel for both parties informed the Court that the Plaintiffs specifically negotiated for the confidentiality agreement to protect their own privacy to safeguard prospective employment opportunities and also negotiated for additional consideration in exchange for the broad release

---

[1] *See also*, *Cheeks*, 2015 U.S. App. LEXIS 13815 at *18–19 (noting the potential for abuse in FLSA settlements where employers/defendants extract broad releases of claims and confidentiality provisions from the plaintiffs/employees without any additional consideration); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6–7 (S.D. N.Y. March 30, 2015) (holding that the language of the release of claims was "far too sweeping to be 'fair and reasonable,' especially considering that the waived claims had "no relationship whatsoever to wage-and-hours issues."); *Cantu, et al., v. Millberger Landscaping, Inc.*, 2014 U.S. Dist. LEXIS 61440, at *3 (W.D. Tex. April 30, 2014) (disapproving of a broad release of claims and a confidentiality provision in FLSA settlement agreement).

[2] *See also Robertson v. Ther-Rx Corp.*, 2011 U.S. Dist. LEXIS 51733, at *3 (M.D. Ala. May, 12, 2011) (striking the confidentiality clause in FLSA settlement); *Yaklin v. W-H Energy Servs., Inc.*, 2008 WL 4951718, at *1 (S.D. Tex. Nov. 17, 2008) (noting that the history and purpose of the FLSA discourages confidentiality provisions); *Prater v. Commerce Equities Mgmt. Co.*, 2008 WL 5140045, at *10 (S.D. Tex. Dec. 8, 2008) (striking a confidentiality provision from FLSA settlement agreement before approving it).

of claims. Counsel's representations alleviated the undersigned's concerns about these two individual provisions, and the Court sees no other reason why the settlement should be disapproved as unfair or unreasonable.

### B. Attorney's Fees

#### 1. Fee Request

Under the FLSA, "in addition to any judgment awarded to the plaintiff or plaintiffs," courts must "allow a *reasonable* attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216 (emphasis added); *see Villegas v. Regions Bank*, 2013 U.S. Dist. LEXIS 1690, at *5 (S.D. Tex. Jan. 4, 2013) (Rosenthal, J.). In this case, the Plaintiffs, as prevailing parties, are entitled to a statutory award of reasonable attorney's fees. Plaintiffs' counsel, who contracted with his client to receive a 40% contingency fee,[3] is requesting approval of attorney's fees in the amount of $220,000 (exclusive of costs and expenses in the amount of $31,575.44). (Dkt. Nos. 139-1 & 146-1.) Mr. Chapman requested payment for 561.96 hours of work in this case – in addition to local counsel, Mr. Adan Gonzalez, claiming 78.12 hours of work. *See* Pls.' Affidavit re: Attorney's Fees at 2, Dkt. No. 146-1. Mr. Chapman asserts that "$425 an hour would be a reasonable and customary rate . . . for this type of litigation." *Id.* at 2. However, he purportedly "reduced [his] hourly rate to $375 per hour . . . to bring the charges in line with the contingent fee and reduced his travel time to less than half." *Id.* at 3. He also

---

[3] Contingency fee agreements do not supplant the obligation of courts to determine reasonable attorney's fees. *See*, *e.g.*, *Zegers v. Countrywide Mortgage Ventures, LLC*, 569 F. Supp. 2d 1259, 1263 (M.D. Fla. 2008); *see also* Francis M. Dougherty, *Effect of Fee Agreement*, 22A Fed. Proc., L. Ed. § 52.1781 ("The Fair Labor Standards Act does not contemplate the award of a speculative or contingent fee, but rather a fee that is reasonable on the basis of the time necessarily spent and the character of the effort required. . . . while the existence of a contingency contract may be considered by the court as an element in determining the market value of an attorney's services for purposes of a fee award, the court is not bound in any sense by that agreement.").

claimed to reduce Mr. Gonzalez's hourly rate from $425.00 to $300.00.  *Id.*  The Court must determine whether the number of hours claimed and the hourly rates requested by Mr. Chapman and Mr. Gonzalez are reasonable.

### 2.  Lodestar & *Johnson* Factors

Courts in the Fifth Circuit use the "lodestar method" for determining reasonable attorney's fees in FLSA suits.  *See*, *e.g.*, *Saizan, et al., v. Delta Concrete Products Co., Inc., et al.*, 448 F.3d 795, 799 (5th Cir. 2006).  The lodestar is calculated by multiplying the number of hours the attorney reasonably expended on the case by the appropriate hourly rate in the community.  *Id.*  Plaintiffs seeking attorney's fees bear the initial burden of submitting adequate documentation of the hours reasonably expended and of the attorney's qualification and skill. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Although the lodestar method effectively replaced the balancing test set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), those factors may still be considered and the lodestar may be adjusted upward or downward in "exceptional cases."  *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  The *Johnson* factors are: (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results ob-tained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

### a. Reasonable Number of Hours Expended

In this case, Mr. Chapman claimed to have expended 561.96 hours and Mr. Gonzalez claimed 78.12 hours. The undersigned reviewed all of the itemized records submitted by Mr. Chapman and Mr. Gonzalez, and based on this review, finds that there is a variance between the hours reported in Plaintiffs' counsel's brief and the hours reflected in the time sheets provided to the Court. After tallying all of Mr. Chapman's submitted hours, the records show that Mr. Chapman worked 494.7 hours and travelled 42.6 hours of travel (for a total of 537.3 hours) and Mr. Gonzalez worked 74.5 hours. Given the complexity of this case, the length of discovery, the number of contested motions and the fact that significant trial preparation took place before the settlement was reached, the Court finds that 537.3 hours for Mr. Chapman and 74.5 hours for Mr. Gonzalez represent a reasonable number of hours expended.

### b. Reasonable Hourly Rate

Having determined the reasonable number of hours expended, the Court must also decide whether Mr. Chapman's requested rate of $375.00 for work and $150 for travel and Mr. Gonzalez's requested rate of $300.00 for work are reasonable hourly rates in this community. Generally, the reasonable hourly rate for a particular community is established through the requesting attorney's affidavit and the affidavits of other attorneys practicing in the same locale. *See Blum v. Stenson*, 465 U.S. 886, 896 (1984) ("To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."); *see also Illinois Cent. R. Co. v. Harried*, 2011 WL 283925, at *10 (S.D. Miss. Jan. 25, 2011) (citing *Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir.1993)). However, the affidavit of

8

the requesting attorney may be sufficient by itself, *see MGM Resorts Mississippi, Inc. v. ThyssenKrupp Elevator Corp.*, 2015 WL 5178122, at *5 (N.D. Miss. Sept. 4, 2015), if the Court, with the assistance of the affidavit and using its own knowledge and experience concerning reasonable and proper fees, can determine the prevailing market rate. *See B-M-G Inv. Co. v. Cont'l/Moss Gordin, Inc.*, 437 F.2d 892, 893 (5th Cir. 1971). The court must reduce the requested hourly rate if it is above "the prevailing market rate of the community for similar services by lawyers of reasonably comparable skills, experience and reputation." *Rivas* 2014 U.S. Dist. LEXIS 153370, at *6–7; *see also*, *e.g.*, *Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd.*, 2014 WL 2115143, at *3 (S.D.N.Y. May 20, 2014) (stating that "plaintiffs' counsel's hourly rates are unacceptably high," and reducing partner rate of $550 to $300, counsel rate of $350 to $200, first-year associate rate of $175 to $125, and paralegal rate of $125 to $75 before approving FLSA settlement); *De La Riva v. Houlihan Smith & Co.,* 2013 WL 5348323, at *5 (N.D. Ill. Sept. 24, 2013) (reducing rates of $550 and $350 to $450 and $300, respectively, before approving FLSA settlement); *Mendez v. Radec Corp.*, 907 F. Supp. 2d 353, 357–58 (W.D.N.Y. 2012) (reducing the average rate billed between attorneys and staff from $230 to $200 before approving FLSA settlement); *Oliva v. Infinite Energy, Inc.*, 2013 WL 6815989, at *4–5 (N.D. Fla. Dec. 24, 2013) (reducing hourly rate from $295 to $235 before recommending approval of FLSA settlement).

Mr. Chapman asserts that his normal billing rate is $425, and that this rate is well within the prevailing market rate for the South Texas legal community. (Dkt. No. 146-1.) He reduced his requested rate to $375.00 as an act of "billing judgment," and cites two recent FLSA decisions in support of this rate request. In *Little v. Technical Specialty Prod. LLC, et al.*, 2014 U.S. Dist. LEXIS 105069 (E.D. Tex. July 31, 2014), the Court found that $495 was a reasonable

9

hourly rate in an FLSA case where the attorney, who practiced in Dallas, had 40 years of legal experience and was board certified in labor and employment law. Similarly, in *Bazile v. City of Houston*, 2013 U.S. Dist. LEXIS 153381, at *3 (S.D. Tex. October 25, 2015), the Court held that hourly rates of $425 and $400 were reasonable in a race discrimination case for an experienced lawyer in a small firm that specialized in employment matters. These cases, however, are distinguishable from the instant action for several reasons. First, the lawyers in those cases practiced in much larger cities – Dallas, Texas and Akron, Ohio. Secondly, the cases were filed in the Sherman Division of the Eastern District of Texas and the Houston Division of the Southern District of Texas, respectively, which both have significantly higher prevailing market rates than Laredo and Corpus Christi, Texas. And finally, in both of these cases where higher fees were awarded, the lawyers were either board certified in employment law or exclusively practiced employment law.

Based on the Court's general knowledge of the prevailing market rates in this community, the Court believes that Mr. Chapman and Mr. Gonzalez's requested hourly rates are higher than lawyers of reasonably comparable skills, experience and reputation performing similar services would charge. This conclusion is bolstered by two recent reports on attorney's fees in Texas and several recent district court opinions awarding fees in FLSA actions.

The State Bar of Texas Department of Research and Analysis compiles data biannually on the average rates charged by attorneys of varying experience in different regions of the state. In its most recent 2013 Report, the State Bar reported that attorneys in Corpus Christi with 16-20 years of experience charge on average $250.00 per hour and attorneys with over 25 years of experience in South Texas, including Laredo, charge on average $232 per hour. *See 2013 Hourly Fact Sheet*, State Bar of Texas Department of Research & Analysis (March 31, 2014).

The Report also noted that the average rate for labor and employment attorneys throughout the State was slightly higher at $256 per hour; however, the rates for solo practitioners and partners at small law firms (2-24 attorneys) were slightly lower, ranging from $230 - $237 per hour. A more recent survey done by Texas Lawyer reveals that equity partners in locations other than Austin, San Antonio, Dallas, Fort Worth and Houston billed on average $345 per hour. *See* Brenda Sapino Jeffreys, *2015 Salary & Billing Survey: Firms Give Modest Raises in 2015 to Administrators and Support Staff*, Tex. Lawyer (July 24, 2015). Several recent district court decisions throughout the Fifth Circuit also demonstrate that the requested fees in this case are marginally too high. *See*, *e.g.*, *Alex v. KHG of San Antonio, LLC*, 2015 WL 5098327, at *3 (W.D. Tex. Aug. 28, 2015) (reducing the fee of a San Antonio attorney who had twenty-six years' of experience and specialized in FLSA litigation from his requested rate of $450 to the prevailing market rate of $325); *Wherley v. Schellsmidt*, 2014 WL 3513028, at *2 (N.D. Tex. July 16, 2014) (reducing the fee of a Dallas-area attorney who had sixteen years' experience and was board certified in employment law from his requested rate of $390 to the prevailing market rate of $325); *Hernandez v. Aleman Const., Inc.*, 2013 WL 5873289, at *5 (N.D. Tex. Nov. 1, 2013) (noting that $275 per hour was the median rate for lawyers practicing in the labor and employment field in the Dallas area, but awarding plaintiffs' attorneys $350 per hour given their experience and specialization in FLSA cases); *Chapman v. A.S.U.I. Healthcare & Dev. Ctr.*, 2013 WL 487032, at *8 (S.D. Tex. Feb. 6, 2013) (finding that the prevailing market rate for two Houston FLSA attorneys were $340 and $325, respectively).

    Therefore, it appears that the range of fees for Texas FLSA cases is between $225 and $450 dollars depending on the size of the relevant legal community, the size of the attorney's law firm and the attorney's experience and reputation. The range of fees Mr. Chapman provided in

his Brief in Support of Attorney's Fees (Dkt. No. 146) falls within this range. The undersigned's survey of other courts' calculations of reasonable hourly fees – bolstered by the State Bar's 2013 Report on Fees and the Texas Lawyer's 2015 Survey of Fees – reveals that rates at the higher end of this range are awarded to attorneys who practice in larger locales such as Dallas and Houston and possess either more specialized experience or who practice in significantly larger firms. In this case, Mr. Chapman is a solo practitioner in Corpus Christi, Texas with eighteen years of litigation experience; and Mr. Gonzalez is a solo practitioner in Laredo, Texas with twenty-seven years' experience. (Dkt. No. 146-1.) While both attorneys have tried numerous jury trials – including FLSA and other employment-related cases – neither is a board certified specialist in employment law. The prevailing market rates for solo practitioners/small firm partners in Laredo and Corpus Christi, Texas, with similar experience to Mr. Chapman and Mr. Gonzalez hover below their requested hourly rates. The Court finds that Mr. Chapman's reasonable hourly rate for this FLSA case is $345 per hour for legal work and $150 per hour for travel[4] and Mr. Gonzalez's is $275 for legal work. Having determined the reasonable number of hours expended and the prevailing hourly rate, the Court calculates the lodestar amounts in this case which are: $177,061.50 for Mr. Chapman and $20,487.50 for Mr. Gonzalez.

There is a "strong presumption of the reasonableness of the lodestar amount." *Saizan, et al.,* 448 F.3d at 800. Nevertheless, the Fifth Circuit has permitted courts to "decrease or enhance the amount [of the lodestar] based on the relative weights of the twelve factors set forth in *Johnson.*" *Id.* The Fifth Circuit has stated that trial courts should "give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel." *Id.* (citing *Migis v. Pearle Vision*, 135 F.3d 1041,

---

[4] The Court commends Mr. Chapman for exercising billing judgment by only charging $150 per hour for travel time and will not disturb this rate.

1047 (5th Cir. 1998)). But courts must be mindful not to adjust the lodestar based on a *Johnson* factor if that factor has already been taken into account in calculating the lodestar. *See Migis*, 135 F.3d at 1047 (citing *Von Clark v. Butler*, 916 F.2d 255, 258 (5th Cir. 1990)). In this case, Mr. Chapman's experience and his customary fee have already been taken into account in calculating the lodestar. However, the time and labor involved in this case was not fully captured by the lodestar because neither Mr. Chapman nor Mr. Gonzalez fully billed for all client communication, communication with opposing counsel or the extensive legal research that occurred during the thirty-two (32) months this case progressed. This case also involved novel and difficult legal issues including the applicability of the small carrier exception to the motor vehicle exemption and the fluctuating work week which necessitated additional legal research and briefing. Additionally, the lodestar did not fully capture Mr. Chapman's solid reputation in his legal community, his skills and abilities as a litigator and his preclusion from other employment during the pendency of the case. Finally, the lodestar did not account for the favorable result Mr. Chapman obtained for his clients. Accordingly, the Court finds that Mr. Chapman's lodestar fees should be adjusted upward by 10%. Given Mr. Gonzalez's more limited role in this case, the lodestar properly accounts for his reasonable fees.

### III. Conclusion

Because this settlement represents a compromise over *bona fide* disputes and is otherwise fair and reasonable, the undersigned **RECOMMENDS** that the District Judge **GRANT** the parties' Joint Motion to Approve the Settlement in the amount of $562,000.00.

The undersigned further **RECOMMENDS** that Plaintiffs' counsel be reimbursed $31,575.44 in costs and expenses from the corpus of the settlement.

Finally, the undersigned **RECOMMENDS** that the District Judge **APPROVE** the Settlement with a slight modification to the amount of Plaintiffs' attorneys' fees and **AWARD** Mr. Chapman $194,767.65 in fees and Mr. Gonzalez $20,487.50 in fees for a combined total of $215,255.15 in attorneys' fees from the corpus of the settlement.

## NOTICE OF RIGHT TO OBJECT

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982) (en banc)).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after being served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations and, except upon grounds of plain error, shall bar the party from appellate review of proposed factual findings and legal conclusions accepted by the District Court to which no objections were filed. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 150–53 (1985); *Douglass,* 79 F.3d at 1428–29.

The Clerk is directed to send a copy of this Report and Recommendation to all parties.

DONE this 25th day of September, 2015 in Laredo.

_____
DIANA SONG QUIROGA
United States Magistrate Judge